**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SUSANA E. VERDUZCO**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF JUSTICE,** *et al*., <br> Defendants. | Case No. 1:24-cv-2245 (CRC) |

**<u>AMENDED MEMORANDUM OPINION</u>**

In 2017, Plaintiff Susana Verduzco underwent an elective surgical procedure at a U.S. Department of Veterans Affairs ("VA") medical center in Arizona. Ms. Verduzco alleges that, while she was sedated, her anesthesiologist administered an opioid analgesic and subjected her to an additional procedure without her consent. Incensed, she filed a medical malpractice suit against the doctor in Arizona state court. The local U.S. Attorney's Office intervened, asserting that the VA doctor was a federal employee, and removed the case to federal court.

In the years since, Verduzco has tried at least twice to litigate various grievances relating to the incident at the VA, to no avail. She has now filed suit in this Court—challenging not the VA doctor's alleged misconduct, but the actions of various federal agencies and one government lawyer in the course of their legal defense of the VA doctor. Verduzco brings three claims against a slate of federal defendants: a constitutional claim for monetary damages under <u>Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics</u>, 403 U.S. 388 (1971) ("<u>Bivens</u>"); an intentional infliction of emotional distress ("IIED") claim; and a somewhat murkier "fraud on the court" claim. The defendants have filed a motion to dismiss all the claims on myriad grounds. For the reasons outlined below, the Court will **GRANT** that motion and dismiss this case with prejudice.

I.     **Background**[1]

Suzana Verduzco lives in Phoenix, Arizona.  On May 22, 2017, she reported to a VA

medical center there for an elective surgical procedure.  Amended Compl. at 3.  According to

Verduzco's complaint, once she was unconscious, the attending anesthesiologist, Dr. Kimberly

Mulligan, further administered an opioid analgesic and then "performed an unwanted and

unnecessary medical procedure" on Verduzco "without full, informed consent."  Id.  Verduzco

was upset and inquired with VA about taking legal action.  She claims the agency told her that

she could sue Dr. Mulligan directly as an independent contractor.  Id. at 4.  Two years after the

incident, Verduzco filed a medical malpractice suit against Dr. Mulligan in state court.  Id.

This case concerns what happened after Verduzco initiated her malpractice suit.  In June

2019, shortly after filing suit, she received a letter from the U.S. Attorney's Office in the District

of Arizona, informing her that Dr. Mulligan was a federal government employee for the purposes

of the lawsuit and, during the procedure, had been acting within the scope of her government

duties.  Id.; see also ECF No. 1 at 9–10.  An Assistant U.S. Attorney then entered an appearance

on Dr. Mulligan's behalf and removed the case to federal court; formally certified that Dr.

Mulligan was acting within the scope of her official duties as a federal employee during the

incident at issue; and substituted the United States for Dr. Mulligan pursuant to the Westfall Act,

28 U.S.C. § 2679.  See Amended Compl. at 5–7; see also ECF No. 1 at 12–23.  The government

---

[1] This background section is based on the factual allegations laid out in the operative
complaint in this case.  See Amended Compl., ECF No. 18 at 2–12.  As the Court explains
below, it must accept Verduzco's factual allegations as true at the motion-to-dismiss stage,
though it need not accept her legal conclusions or speculative assertions.

The Court further observes that Verduzco has filed many miscellaneous motions and
documents on the docket.  For the purpose of resolving the present motion to dismiss, the Court
considers only the relevant pleadings and attachments, other records susceptible to judicial notice
at this juncture, and the motion-to-dismiss briefing.

then moved to dismiss Verduzco's claim for lack of subject matter jurisdiction because she had failed to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"). See ECF No. 1 at 25–29. The district court granted the government's motion on that basis. See Verduzco v. Mulligan ("Verduzco I"), No. 2:19-cv-4745, ECF No. 22 (D. Ariz. Sep. 24, 2019).

Verduzco nevertheless perceived the government's conduct in defending the medical malpractice suit as deceitful and evasive. See Amended Compl. at 10–11. Among other things, she contends that the government attorneys assigned to the case fabricated Dr. Mulligan's Westfall Act certification; distorted the truth in arguing that the district court lacked jurisdiction over the case; and brushed her off when she challenged the truthfulness of their representations in court. See id. at 5–12. So in January 2020, she sued the U.S. Attorney's Office for the District of Arizona "for filing falsified legal documents and false evidence to obstruct justice, through fraud, judicial interference, and violation of civil rights under color of law, inter alia." Id. at 11; see also Verduzco v. United States Attorney's Office ("Verduzco II"), No. 2:20-cv-49, ECF No. 1 (D. Ariz. Jan. 8, 2020). This case was dismissed for lack of subject matter jurisdiction, as well, because Verduzco failed to exhaust her administrative remedies under the FTCA as to her various tort claims, including breach of good faith and fair dealing and legal malpractice. See generally id., ECF No. 22 (D. Ariz. July 27, 2020).

Stymied in other fora, Verduzco has now filed a similar case in this court, accusing several federal offices and a government lawyer of foul play in their defense against her malpractice suit. More specifically, she brings what she has styled as a Bivens claim against the United States Department of Justice ("DOJ"), the Office of the Attorney General, the U.S. Attorney's Office for the District of Arizona, and Katherine Branch, the Civil Branch Chief of the Arizona U.S. Attorney's Office (collectively, "Defendants") for allegedly violating her

constitutional rights.  She further alleges that the Defendants have inflicted intentional emotional distress and perpetrated a "fraud on the court."  Upon receiving Verduzco's initial complaint, the Defendants filed a motion for a more definite statement, which the Court granted.  Verduzco then filed an Amended Complaint, which the Defendants have since moved to dismiss.  With the briefing process complete, that motion is now ripe for adjudication.

## II.    Legal Standard

Defendants have moved to dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6).  Under all three standards, the Court is generally to accept the factual material alleged in the complaint as true and draw all reasonable inferences from those facts, but that principle does not apply to legal conclusions or purely speculative assertions.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678–80 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  The pleadings of *pro se* plaintiffs are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).[2]  Courts may consider "all [of a *pro se* litigant's] filings, including filings responsive to a motion to dismiss," when evaluating a motion to dismiss.  Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024).  Although a *pro se* complaint is not held to the same standard as one penned by a licensed attorney, it must still satisfy the Rule 12(b)(1), 12(b)(3), and 12(b)(6) standards laid out below.  Cf. Atherton v. DC Office of the Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (a *pro se* plaintiff's complaint must still "permit[]

---

[2] Verduzco apparently is a "[l]aw [s]chool graduate," see ECF No. 1 at 5, but not a barred attorney.  As such, she is "still a pro se litigant and cannot be held to the same standard as a [licensed] lawyer."  Stankevich v. Kaplan, 156 F. Supp. 3d. 86, 98 (D.D.C. 2016).

the court to infer 'more than the mere possibility of misconduct'" even though it is held to a "less stringent standard" (quoting Iqbal, 556 U.S. at 679)).

    A.  Federal Rule of Civil Procedure 12(b)(1)

Because federal courts are courts of limited jurisdiction, "the plaintiff bears the burden of establishing . . . that the court has jurisdiction to entertain [her] claims." Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 (D.D.C. 2007). Subject matter jurisdiction implicates "a court's power to a hear a claim," so courts should scrutinize a plaintiff's allegations more closely on a Rule 12(b)(1) challenge than they would on a Rule 12(b)(6) challenge. Lewis v. United States, 83 F. Supp. 3d 198, 204 (D.D.C. 2015).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Anderson v. Carter, 802 F.3d 4, 8 (D.C. Cir. 2015) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)). Federal agencies and federal officials sued in their official capacities for money damages are covered by sovereign immunity, unless that immunity has been waived. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); Clark v. Libr. of Cong., 750 F.2d 89, 103 (D.C. Cir. 1984). "In plain English," this means that plaintiffs "cannot sue the federal government, agencies of the federal government, or employees of the federal government for acts they perform in their official capacities, unless the federal government has expressly agreed to be sued." Roum v. Bush, 461 F. Supp. 2d 40, 45 (D.D.C. 2006). Because sovereign immunity is "jurisdictional in nature," claims barred by this immunity are appropriately dismissed under Rule 12(b)(1). Black Lives Matter D.C. v. United States, 775 F. Supp. 3d 241, 262–63 (D.D.C. 2025) (quoting Meyer, 510 U.S. at 475 (1994)).

B.  Federal Rule of Civil Procedure 12(b)(3)

Under Rule 12(b)(3), a court may dismiss or transfer a case for improper venue under 28 U.S.C. § 1391.  "Courts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District[.]"  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).  When venue is improper, the decision whether to dismiss or transfer the case "is committed to the sound discretion of the district court."  McCain v. Bank of Am., 13 F. Supp. 3d 45, 55 (D.D.C. 2014) (citations omitted).  Though the interests of justice often favor transfer, dismissal may be appropriate when the complaint contains "obvious substantive defects."  Fam v. Bank of Am. NA (USA), 236 F. Supp. 3d 397, 409 (D.D.C. 2017); see also Simpkins v. D.C. Gov't, 108 F.3d 366, 370 (D.C. Cir. 1997).

C.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Again, a complaint must offer more than "naked" assertions or "legal conclusions couched as factual allegations."  Id. (cleaned up).

## III.  Analysis

Both of the lawsuits that Verduzco filed in the wake of her May 2017 surgical procedure suffered jurisdictional defects.  So too here.  For the reasons discussed below, the Court dismisses all claims against all Defendants on jurisdictional grounds.

A.  Bivens Claims

A Bivens claim is a narrow, judicially-created cause of action aimed at holding federal officers accountable for constitutional violations committed in their individual capacities.  See, e.g., Egbert v. Boule, 596 U.S. 482, 490–93 (2022).  Verduzco purports to bring Bivens claims against the Defendants based on their alleged violations of her Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Fourteenth Amendment rights.  See Amended Compl. at 16.  The crux of Verduzco's constitutional argument—which is creative, to put it mildly—is that federal attorneys "fabricate[d] evidence" that Dr. Mulligan was a federal employee in order to haul Verduzco from state court into federal court, thereby denying her rights to free movement, due process, and equal protection, among others.  See Amended Compl. at 16–17.  While Verduzco would face an uphill battle on this theory under the best of circumstances,[3] her Bivens claim stumbles out the gate because none of the Defendants are individual officers sued in their personal capacities.

To begin, DOJ, the Office of the Attorney General, and the U.S. Attorney's Office for the District of Arizona are federal agencies or offices, and it is well-established that Bivens claims can only lie against individuals, not the federal government itself.  Meyer, 510 U.S. at 485.  After all, the Supreme Court "implied a cause of action against federal officials in Bivens in part *because* a direct action against the Government was not available" due to sovereign immunity.

---

[3] There are a whole host of problems with Verduzco's Bivens claims.  For starters, she struggles to paint a routine removal of a case from state to federal court as a violation of any constitutional right, let alone a clearly-established right, as needed to establish a *prima facie* Bivens claim.  See Patterson v. United States, 999 F. Supp. 2d 300, 308 (D.D.C. 2013).  Even if Verduzco could establish some constitutional violation, the extension of a Bivens action to this factual scenario would be novel, and the expansion of Bivens in new circumstances is a "disfavored judicial activity."  Egbert, 596 U.S. at 491 (citation omitted).  Moreover, the challenged conduct occurred primarily in 2019 and 2020, far beyond the maximum possible three-year statute of limitations on Bivens actions.  See Richardson v. Yellen, 167 F. Supp. 3d 105, 115 (D.D.C. 2016).

Id. (citing Bivens, 403 U.S. at 410 (Harlan, J., concurring)).  In her opposition brief, Verduzco concedes this point, at least as a general matter.  See Resp. to Def.'s Mot. to Dismiss ("Opp. Br."), ECF 35 at 14 ("As federal agencies are not and cannot be individuals, they are immune from a Bivens claim.").  The Bivens claims against these three Defendants must be dismissed.

As for Katherine Branch, Verduzco's original complaint indicated that she intended to sue Branch in her "[o]fficial capacity."  See ECF No. 1 at 3.  Again, Bivens actions for monetary damages are only available when levied against individual officers sued in their personal capacity; sovereign immunity otherwise protects officers sued in their official capacity from the recovery of monetary damages.  See Simpkins, 108 F.3d at 368; see also Clark, 750 F.2d at 103–04.  It might be argued that, in identifying Ms. Branch by name rather than position, Verduzco intended to sue her in her personal capacity.  But even if the Court were to entertain this argument (which Verduzco has not squarely made) and read the complaint generously due to her *pro se* status, it still would not be able to surmise that Branch was sued in her personal capacity. The Amended Complaint nowhere alleges that Branch committed any relevant act in her individual, rather than official, capacity.  In fact, it details *no* specific act that Branch took in her role as Civil Division Chief.  What's more, according to Verduzco, Branch only "join[ed] this legal dispute" by becoming Civil Division Chief in 2022, see Opp. Br. at 15, years after any of the allegedly deceitful conduct took place.

Verduzco adds one iota of information in her opposition brief:  Once Branch joined the dispute, she purportedly "refuse[d] to help clean up, correct, or mitigate the administrative error that is tainting the judicial machinery and obstructing justice."  Id. at 14.  Generally, the Court may not consider new factual allegations included in the response to a motion to dismiss.  See, e.g., Bain v. Off. of Att'y Gen., 648 F. Supp. 3d 19, 43 (D.D.C. 2022).  But even if it were to do

8

so here, Verduzco's cursory assertion does not undercut the otherwise clear intention to sue Branch in her official capacity.  Fairly read, both the complaint and the opposition brief suggest that Branch is a stand-in of sorts for government attorneys who formerly litigated cases against Verduzco.  Cf. Opp. Br. at 14 (Verduzco "is bringing a damages action against Katherine Branch, an individual federal officer for civil rights violations *because she is the Chief of the Civil Department for agency Defendant in Arizona . . .*" (emphasis added)).

In sum, Verduzco's Bivens claims fail from the jump.  Each Defendant, for one reason or another, enjoys sovereign immunity from these claims for monetary damages.  As sovereign immunity is a threshold jurisdictional issue, the Bivens claims must be dismissed under Rule 12(b)(1).

B. IIED

IIED is a common-law tort.  Sovereign immunity generally bars tort claims against the federal government and federal employees acting in their official capacities.  "There is one federal statute, however, that contains a limited waiver of sovereign immunity for tort claims against federal government employees—the [FTCA]."  Roum, 461 F. Supp. 3d at 45.  "[A] plaintiff may only assert an IIED claim against a federal agency pursuant to the FTCA."  Smalls v. Emanuel, 840 F. Supp. 2d 23, 35 (D.D.C. 2012).

Instead of alleging an FTCA claim, Verduzco has brought a freestanding IIED claim based on the federal government's "extreme and outrageous conduct" in defending her medical malpractice suit, which she submits caused her "severe emotional distress."  See Amended Compl. at 19–21.  Such a stand-alone tort claim cannot be brought without triggering the application of sovereign immunity, so Rule 12(b)(1) dismissal is warranted.

Even if Verduzco had properly brought an FTCA claim based on IIED, that claim would also have to be dismissed.  "Under the FTCA, a plaintiff may sue the government for 'personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government."  Norton v. United States, 530 F. Supp. 3d 1, 5 (D.D.C. 2021) (quoting 28 U.S.C. § 1346(b)(1)).  To do so, she must "first satisfy the FTCA's exhaustion requirement under 28 U.S.C. § 2675(a)," which in turn requires presenting the claim in writing to the relevant federal agency within two years of its accrual and having that claim formally denied.  Id.  It is well-established in the D.C. Circuit that FTCA's exhaustion requirement is jurisdictional.  Id. at 5–7; see also Yirenkyi v. CIA, 656 F. Supp. 3d 241, 248–49 (D.D.C. 2023).

There is no suggestion in the operative complaint that Verduzco has exhausted her administrative remedies as to her IIED claim specifically, whether by presenting it to the relevant government defendants in writing or waiting for them to actually or constructively deny the claim.  It is not enough to argue, as Verduzco does, that she may have exhausted *prior* claims, such as her medical malpractice, breach of good faith and fair dealing, or legal malpractice claims.  See Opp. Br. at 24.  Those torts are distinct from the new tort she has alleged here.  Because Verduzco "bears the burden of establishing jurisdiction" and has "failed to demonstrate that [she] took the necessary steps to exhaust [her] administrative remedies with regard to" her IIED claim, the Court lacks jurisdiction to consider that cause of action.  Totten v. Norton, 421 F. Supp. 2d 115, 123 (D.D.C. 2006).

### 3. Fraud on the Court

Last, Verduzco alleges that the Defendants have committed a "fraud on the court."  The precise nature of this claim is unclear.  The Court could interpret the cause of action in a few different ways.  But no matter how it is sliced, the claim comes up short.

10

One way of reading Verduzco's claim is as a kind of common-law fraud action.  See Amended Compl. at 13 (citing common-law fraud cases).  If that were the intention, the claim runs headlong into the FTCA, whose otherwise "broad waiver of sovereign immunity" is subject to an important exception where a plaintiff sues on the basis of an intentional tort like "misrepresentation" or "deceit."  Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2680(h)).[4]  Even if such a common-law fraud claim were pleaded as an FTCA claim, Verduzco hasn't properly exhausted her administrative remedies as to any fraud claim.  So again, sovereign immunity would attach and require dismissal of the claim under Rule 12(b)(1).[5]

The government has read the fraud claim a different way: as a request for relief from judgment under Federal Rule of Civil Procedure 60.  In so doing, the government appears to conflate two sub-sections of Rule 60 that courts have treated distinctly, and Verduzco follows suit in her opposition brief.  Rule 60(*b*)(3) allows a court to "relieve a party . . . from a final judgment, order, or proceeding" due to, among other things, "fraud . . ., misrepresentation, or

---

[4] The Court acknowledges that the FTCA's so-called "intentional tort exception" includes a proviso allowing for certain intentional tort suits against "investigative or law enforcement officers of the United States Government."  See 28 U.S.C. § 2860(h).  Yet "misrepresentation" and "deceit" are not on that list of torts, and it is far from clear that federal attorneys qualify as "law enforcement officers" under that proviso.  In any case, this issue is far afield of the briefing before the Court.  Even if a *pro se* complaint is to be liberally construed, the plaintiff may not "shift the burden of litigating" her case "to the courts," Dozier v. Ford Motor Co., 702 F.2d 1189, 1194 (D.C. Cir. 1983), nor may courts "conjure up and decide issues never fairly presented to [them]."  Bano v. Bright Horizons IMF, No. 20-cv-0064 (CKK), 2020 WL 5518229, at *7 (D.D.C. Sept. 14, 2020), aff'd, No. 20-7099, 2021 WL 1526208 (D.C. Cir. Mar. 22, 2021) (citation omitted).

[5] To boot, Verduzco's fraud claim may be issue-precluded because of the fundamental similarities between this case and Verduzco II, which was litigated to a final judgment regarding sovereign immunity.  See Calderon-Lopez v. Saul, No. 19-cv-1851 (KBJ), 2021 WL 2103224, at *4–6 (D.D.C. 2021) (explaining that federal courts may raise *sua sponte* the issue-preclusive effect of a prior dismissal for lack of subject matter jurisdiction).  Because the Court can dismiss this claim on several other grounds, however, it need not address preclusion here.

11

misconduct by an opposing party."  Rule 60*(d)*(3) separately preserves a court's inherent,
equitable power to "set aside a judgment for fraud on the court."  This second kind of fraud-on-
the-court claim may be "entertain[ed]" by a court in an "independent action."  Fed. R. Civ. P.
60(d)(1).

Rule 60(d)(3) fraud on the court encompasses far more than the "garden variety fraud"
covered by Rule 60(b)(3).  Bowie v. Maddox, 677 F. Supp. 2d 276, 282 (D.D.C. 2010).  The
former is "fraud which is directed to the judicial machinery itself and is not fraud between the
parties or fraudulent documents, false statements or perjury."  Baltia Air Lines, Inc. v.
Transaction Mgmt., Inc., 98 F.3d 640, 642 (D.C. Cir. 1996) (citation omitted).  In other words, it
must so seriously compromise the court's integrity that the court "cannot perform in the usual
manner its impartial task of adjudging cases that are presented for adjudication[.]"  Bowie, 677
F. Supp. 3d at 279.  And for that reason, the D.C. Circuit has explained that this kind of fraud
"refers only to very unusual cases involving far more than an injury to a single litigant."  Baltia,
98 F.3d at 642 (cleaned up).

Dismissal is appropriate whether Verduzco's claim falls under Rule 60(b)(3) or Rule
60(d)(3).  Consider the first route.  If Verduzco's fraud claim falls under the purview of Rule
60(b)(3), her claim "do[es] not empower this [C]ourt to provide the relief she seeks."  Klayman
v. Jud. Watch, Inc., No. 19-cv-2604 (TSC), 2021 WL 602900, at *5 (D.D.C. Feb. 16, 2021),
aff'd 851 Fed. App'x 222 (D.C. Cir. 2021).  That is because she would effectively be asking this
Court to set aside judgments issued by the District Court for the District of Arizona based on
allegedly fraudulent representations and documents proffered by the government in her earlier
cases, and "[f]ederal district courts lack the power to void other federal courts' orders through a
collateral attack."  McNeil v. Harvey, No. 17-cv-1720 (RC), 2018 WL 4623571, at *5 (D.D.C.

12

Sep. 26, 2018) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995)).  To the extent Verduzco believed that the U.S. Attorney's Office perpetrated fraud in one of her other cases, she "could have sought relief under Rule 60" within a year of the judgments rendered in those cases, "but this court cannot grant such relief retroactively."  Ashbourne v. Hansberry, No. 21-cv-1313 (LLA), 2024 WL 3471243, at *5 n.3 (D.D.C. July 18, 2024).

The second route ends at the same destination.  Although a Rule 60(d)(3) fraud-on-the-court claim brought pursuant to the court's equitable authority may technically be "entertain[ed]" by a court in an "independent action," Fed. R. Civ. P. 60(d)(1), the D.C. Circuit has explained that a plaintiff "cannot maintain" such an independent action where she "has an adequate remedy at law via a direct appeal."  Klayman, 851 Fed. App'x at 222.  Here, again, Verduzco could well have raised concerns about fraud in her prior Arizona cases; indeed, Verduzco II seems to have focused quite intently on the U.S. Attorney's Office's alleged misdeeds during the litigation of Verduzco I, especially the purportedly fabricated Westfall Act certification.  See generally Verduzco II, No. 2:20-cv-49, ECF No. 1 (D. Ariz. Jan. 8, 2020).  Verduzco may believe that she has a better shot at persuading this Court of the government's fraud, but that alone doesn't mean she can ask it to "vacate prior orders of another district court."  Klayman, 851 Fed. App'x at 222.

This shortcoming is just the tip of the iceberg.  Other than two fleeting references to the possibility of injunctive relief in her opposition, see Opp. Br. at 8, 12, Verduzco has consistently maintained that the relief she seeks in this case is money damages, to the tune of 17.5 billion dollars no less.  See, e.g., ECF No. 1 at 5 ("Plaintiff . . . seeks monetary compensation . . ."); Amended Compl. at 2 ("Plaintiff . . . brings a $17.5 Billion USD Bivens claim . . ."); see generally Opp. Br. (characterizing the action as one for money damages).  Damages do not appear to be available under Rule 60(d)(3).  In any case, if Verduzco seeks only "damages

13

against the United States for fraud upon the court, the claim is barred by sovereign immunity" for the reasons already explained several times over.  Mauney v. Holder, No. 09-cv-2182 (PLF), 2009 WL 4031579, at *1 (D.D.C. Nov. 19, 2009) (cleaned up).

For another, even accepting Verduzco's factual allegations as true without crediting any of her legal conclusions or speculations, the complaint gives the Court no reason to think that the government attorneys described in her complaint have engaged the kind of grave fraud that would be independently actionable in a separate court under Rule 60(d)(3)—or any fraud for that matter.[6]  Again, a fraud on the court requires more than just "fraud between the parties," the filing of "fraudulent documents," or the making of misleading statements.  Lane v. Fed. Bureau of Prisons, 285 F. Supp. 3d 246, 248 (D.D.C. 2018) (quoting Baltia, 98 F.3d at 642–43).  It entails a threat to the "judicial machinery."  Id.  Discounting the complaint's more colorful, but ultimately baseless, accusations, what remains is run-of-the-mill fraud, at best, and "not all fraud is fraud on the court."  Roggio v. FDIC, No. 09-cv-1733 (TJK), 2025 WL 3459902, at *3 (D.D.C. Dec. 2, 2025).  The government's alleged deceit—to the extent it can fairly be characterized as such—may work an injury to Verduzco as a "single litigant," Baltia, 98 F.3d at 643 (citation omitted), but does not compromise the court's fundamental ability to "perform in the usual manner its impartial task of adjudging cases that are presented for adjudication[.]"

---

[6] In her opposition brief, Verduzco lays out a list of "misrepresentations" made by the government attorneys in her removed malpractice case.  Opp. Br. at 20–22.  Even viewed in a generous light, this list reads more like a summary of the major filings in that case than a set of lies or fabrications.  Id.  Verduzco does allege that the Assistant U.S. Attorneys assigned to the case falsified Dr. Mulligan's Westfall Act certification.  Amended Compl. at 6.  But it takes more than a naked assertion to make out a fraud claim.  Cf. Fed. R. Civ. P. 9(b) (describing the particularity necessary in a complaint alleging fraud).  Stripped of its legal conclusions and speculative allegations, the complaint reveals that Verduzco noticed a discrepancy between her communications with the VA and her legal colloquies with the U.S. Attorney's Office in court as to the nature of Dr. Mulligan's employment.  Without more, those discrepancies do not give rise to a plausible inference of fraud, let alone Rule 60(d)(3) fraud on the court.

14

Bowie, 677 F. Supp. 3d at 279.  Nor does it represent the "corruption of the judicial process itself"—which would incorporate something like the "bribery of a judge," for instance.  Lenz v. IRS, No. 24-cv-5276, 2026 WL 446303, at *1 (D.C. Cir. Feb. 17, 2026) (quoting 11 Wright & Miller's Fed. Prac. & Proc. § 2870 (3d ed. 1998)).  As such, Verduzco's allegations are not appropriate fodder for a Rule 60(d)(3) claim.  See, e.g., Seltzer v. Lieder, No. 22-cv-329 (JMC), 2024 WL 1532582, at *3 (D.D.C. Apr. 9, 2024) (explaining that plaintiff's fraud-on-the-court claim was "not a viable cause of action" because she was "an individual litigant attempting to bring a civil suit for damages against Defendants," and her allegations of fraud did not rise to the requisite level of severity and "involved only these parties").

To sum up, Verduzco's "fraud on the court" claim might be read in several different ways.  Because Verduzco is a *pro se* litigant, the Court owes her complaint a more lenient read than it would afford a pleading drafted by a licensed attorney.  But no matter the approach, the Court must conclude that it lacks the power to hear the claim, whether because of a sovereign immunity bar or the structural unavailability of a fraud claim under Rule 60.  Whatever shape it takes, the "fraud on the court" claim must therefore be dismissed.[7]

---

[7] Although the Court does not decide the Defendants' 12(b)(3) motion, it notes that this judicial district is arguably an improper venue for litigating Verduzco's grievances because the events undergirding her claims occurred in Arizona.  Although a plaintiff may sue an officer, employee, or agency of the United States where they "reside," see 28 U.S.C. § 1391, and for many agencies that jurisdiction may be the District of Columbia, venue is "not appropriate" in the District "where the only real connection the lawsuit has to [the District] is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process."  Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 26 (D.D.C. 2002) (cleaned up).  Such is the attenuated connection Verduzco asserts here.  See Opp. Br. at 29 ("Plaintiff brought this case to D.C. because the Attorney General in D.C. is responsible for overseeing and supervising the Department of Justice.").  Her principal reason for filing suit in the District is that she has been unsuccessful in litigating her grievances in Arizona.  See id. Again, "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia" by naming high-

15

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A

separate Order shall accompany this memorandum opinion.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:  June 9, 2026

---

level offices or officials who were not meaningfully involved in the allegedly unlawful conduct. Cameron, 983 F.2d at 256.

In any event, if venue were improper in this district, the Court would have nevertheless opted to dismiss the case outright, rather than transfer it to the District of Arizona because there are several "substantive defects" that are plain from the face of the complaint, as this Memorandum Opinion has made clear.  Fam, 236 F. Supp. 3d at 409.

16